UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


CORY ANTHONY SIMPSON,

            Plaintiff,


v.                                    Civil Action No. 2:09-cv-00021


OFFICER KAPELUCK and
OFFICER C.J. HOWELL,

            Defendants.


MEMORANDUM OPINION AND ORDER


            This action was previously referred to Mary E. Stanley,
United States Magistrate Judge, who submitted her Proposed
Findings and Recommendations on February 4, 2010, pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(B).

            The magistrate judge recommends dismissal of
plaintiff's complaint for failure to prosecute.  The PF&R was
originally sent to plaintiff's provided address and returned as
undeliverable.  Thereafter, the court learned that plaintiff was
incarcerated and ordered the PF&R sent to his jail address.  The
PF&R was mailed to plaintiff at the South Central Regional Jail
pursuant to the court's order entered March 17, 2010, that gave

plaintiff until April 5, 2010, to object to the PF&R.

On March 23, 2010, the clerk's office received and filed plaintiff's "Response towards motion of proposed findings and recommendations," which does not respond to Judge Stanley's findings, but rather asserts that plaintiff has not yet received the medical records he requested, points to conflicting statements by the defendants and reasserts plaintiff's injuries. Plaintiff then mailed 24 additional documents to the court, including letter-form motions and responses to defendants' motion for summary judgment/motion to dismiss and the PF&R. Defendants replied to plaintiff's "response" on March 31, 2010.

The following excerpts from two of the 25 subsequently filed documents relate to the magistrate judge's findings. One document, filed April 6, 2010, is titled "Respondance to defendants reply towards motion of proposed findings and recommendations." In this document plaintiff states,

> Defendants also states I have not responded back to their motions, which I written to the court stating the reason why I have not had the chance to respond to defendants motions. I did not receive majority of mail from district court which district court are fully made awared of that due to fact the mail which were mailed to me was returned back to district court undeliverable.

(Doc. 75, Apr. 6, 2010).

2

Another document, filed April 6, 2010, is titled
"Respondance to defendants responses to proposed findings and
recommendation."  In this document, plaintiff merely refers to
the reasons for his earlier failures to respond to the PF&R,

> 3. I have recently written a letter to district court
> explaining why I did not make respondance toward
> defendants motions.  The letter specifically states the
> residence where I was receiving mail 164 dorchester rd.
> my friend which who's leasing apartment did not inform
> me of the receiving of mail from district court.
>
> 4. The court is fully awared of issue me not receiving
> mail from district court due to fact it states in an
> order signed by Judge John T. Copenhaver Jr. on March
> 17th of 2010 that the mail were returned as
> undeliverable.

(Doc. 79, Apr. 6, 2010).

I.

Plaintiff instituted this action against the Charleston
Police Department, Unknown Charleston Police Officers and the
City of Charleston on January 12, 2009.  On July 22, 2009,
plaintiff amended his complaint naming the City of Charleston,
Officer Kapeluck and Officer Howell.  The City of Charleston was
terminated by order on July 27, 2009.  Plaintiff alleges in his
amended complaint that on September 25, 2008, he was being
escorted in shackles and handcuffs out of a municipal courtroom
by the defendant officers when he was tasered by one of the

3

officers, once in the right leg and once in the testicles. (Am.
Compl. 4). Defendants assert that plaintiff was escorted from
the courtroom at the request of municipal court Judge Taylor
because plaintiff was causing a disruption and having an
"emotional outburst," and that he was tasered during the
following altercation with the defendants for which plaintiff is
currently charged with felony assault. (Ans. 1; Def.'s Mem. 4).
Plaintiff claims that as a result of the tasering, he suffered
severe swelling, pain, loss of appetite, and pain during
urination. (Am. Compl. 4). Plaintiff asserts that he was seen
by a doctor in South Central Regional Jail after the incident and
he received Motrin for "severe swelling and pain." (Id. at 3).
After the incident plaintiff was charged with two counts of
battery on an officer with a $5,000 bond, but claims that he was
released after two or three days. (Id. at 5). Plaintiff
requested $5,000,000 in relief. (Id.).

        Defendants filed their motion for summary judgment or,
in the alternative, motion to dismiss on December 9, 2009,
asserting that neither officer used excessive force in
restraining plaintiff, that they are entitled to qualified
immunity, and the court should dismiss this case pursuant to Rule

41(b) for failure to prosecute.[1]  (Def.'s Mem. 5, 8, 10).  On
December 14, 2009, the magistrate judge ordered plaintiff to
respond to defendants' motion on or before December 28, 2009, and
specifically advised him that failure to respond "may result in
entry of summary judgment denying the relief sought in the
Amended Complaint and dismissing the suit."  (Order, Dec. 14,
2009).  Plaintiff failed to respond to defendants' motion.

In the PF&R, the magistrate judge sets forth
plaintiff's repeated failures to prosecute his case, including
his failure to attend two status conferences, his failure to
respond to Officer Kapeluck's discovery requests and his failure
to respond to defendants' motion for summary judgment, despite
the magistrate judge's orders.  (PF&R 16).

Since the PF&R was resent to plaintiff to his jail
address, the court has been flooded with 25 motions and demands
for rulings upon those motions once plaintiff finally decided to
pursue his case.  Plaintiff's 25 newly filed documents do not
address the findings of the PF&R.  Instead, in these documents,
plaintiff requests discovery from defendants, release from

---

[1]The court notes that defendants have neither asserted in
their answer the affirmative defense of failure to exhaust
remedies, nor have they argued it in their motion for summary
judgment/motion to dismiss.

5

incarceration for medical assistance, a suppression hearing, amendment of his complaint, and he attempts to respond to defendants' motion for summary judgment.

As mentioned above, in one of the plaintiff's documents sent to the court, filed April 6, 2010, plaintiff accounts for his lack of response by asserting that he did not receive every order sent to him by the magistrate judge. The docket reflects that, other than the PF&R that was resent to plaintiff in jail, two orders of an administrative nature sent to plaintiff's address were the only mailings returned as undeliverable. One order was the magistrate judge's order of May 7, 2009, directing plaintiff to report to the court the status of his legal representation, and the other was the magistrate judge's order of July 16, 2009, directing plaintiff to complete a 42 U.S.C. § 1983 form. Plaintiff nevertheless complied with both orders.

The court notes that during the pendency of this case, plaintiff has been incarcerated twice and has provided the court with at least five different addresses. However, plaintiff does not specifically deny that he received the magistrate judge's order entered November 4, 2009, compelling his responses to Officer Kapeluck's discovery by November 13, 2009, nor her order directing him to respond to defendants' motion for summary

6

judgment/motion to dismiss by December 28, 2009; yet, plaintiff
failed to respond in both instances.

        Plaintiff filed five documents on April 6, 2010,
complaining that the court, by its order of March 17, 2010, had
granted him an extension to file objections until April 5, 2010,
which plaintiff erroneously construed as time in which to
prosecute his case.  The plaintiff then gratuitously observes
that the court, in violation of his rights, neglected to respond
to his motions filed between March 23, 2010, and March 31, 2010,
being before the extended date of April 5, 2010.  Plaintiff's
reliance on the court's March 17, 2010, order is misplaced.  The
court granted plaintiff an extension of time until April 5, 2010,
to object to the PF&R, not to prosecute his case.


                              II.


        "[D]ismissal with prejudice is a harsh sanction which
should not be invoked lightly in view of the sound public policy
of deciding cases on the merits." Davis v. Williams, 588 F.2d
69, 70 (4th Cir. 1978) (quotations omitted).  In dismissing a
case pursuant to Rule 41(b), the court must take the following
four factors into account:

        (1) the degree of personal responsibility of the

                               7

        **plaintiff,**
        **(2) the amount of prejudice caused the defendant,**
        **(3) the existence of a 'drawn out history of**
        **deliberately proceeding in a dilatory fashion', and**
        **(4) the existence of sanctions less drastic than**
        **dismissal.**
**Id.**

        Here, the <u>pro se</u> plaintiff was solely responsible for

prosecuting his case, but failed to respond either to discovery

or defendants' motion for summary judgment/motion to dismiss.

Thus, the first factor weighs in favor of dismissal.


        With respect to the second factor, the magistrate judge

notes and defendants assert that defendants "have incurred

expenses and attorney's fees through the filing of motions and

discovery documents with the court, and through attempted

correspondence with the Plaintiff."  (PF&R 16, Defs.' Rep. n.

10).  However, aside from one motion to compel discovery,

defendants' accrual of expenses and fees, prior to the PF&R, for

their filings of motions and discovery documents are not a result

of plaintiff's failure to prosecute.  Defendants would have filed

their discovery requests and dispositive motion regardless of

plaintiff's timeliness.  That is not to suggest that defendants

have not incurred some undue expense.  Also, it is possible that

defendants suffered some prejudice through plaintiff's lack of

responses to their discovery requests, in that they were unable

                                8

to assess fully their exposure to liability.  Thus, this factor does weigh slightly in favor of dismissal.

With respect to the third factor, the PF&R presents the procedural history of this case, which includes the following failures of plaintiff to comply with the magistrate judge's orders: plaintiff failed to appear at a status conference scheduled for April 21, 2009; he failed to comply with the deadline to fill out a new complaint form by the deadline set in the magistrate judge's order of June 19, 2009; he failed to appear at a status conference scheduled for August 27, 2009; he failed to comply with the magistrate judge's September 29, 2009, order setting the discovery schedule; he failed to comply with the magistrate judge's November 4, 2009, order compelling his responses to Officer Kapeluck's discovery requests; and he ignored two <u>Roseboro</u> notices informing him of his right and obligation to respond to defendants' motion for summary judgment/motion to dismiss.  Plaintiff's complaint of not receiving two minor orders in the mail does not excuse his repeated noncompliance with the orders and deadlines of which he was aware.  Thus, the third element weighs in favor of dismissal.

As for the fourth factor, the court must consider whether sanctions less harsh than dismissal are appropriate.  It

is worth repeating that plaintiff is proceeding pro se and must be given some leniency.  However, pro se litigants, "as well as other litigants are subject to the time requirements and respect for court orders without which judicial administration would be impossible."  Ballard v. Carlson, 882 F.2d 93, 96 (4th Cir. 1989).

On December 14, 2009, the magistrate judge warned plaintiff that "a failure to respond to the motion [for summary judgment] may result in entry of summary judgment denying the relief sought in the Amended Complaint and dismissing the suit." (Order, Dec. 14, 2009).  In Ballard, where the magistrate judge explicitly warned the plaintiff that a failure to comply with an order would be detrimental to his suit, the Court of Appeals for the Fourth Circuit concluded that, "In view of the warning, the district court had little alternative to dismissal.  Any other course would have placed the credibility of the court in doubt and invited abuse."  Ballard, 882 F.2d at 96.

While monetary sanctions may be a warranted alternative to dismissal in some circumstances, in this case they would be inappropriate or ineffective due to plaintiff's status as an incarcerated, indigent, pro se litigant.

Another possible alternative to dismissal is modifying the scheduling order and setting short discovery deadlines. <u>See Garcia-Perez v. Hospital Metropolitano</u>, 597 F.3d 6, 9 (1st Cir. 2010) (suggesting the lesser sanction of "continuing the trial date to a date certain and imposing monetary sanctions . . . and then setting short deadlines for production of the expert's report and any other remaining pretrial events and strictly enforcing them."). The problem with this resolution is that while defendants have not suffered great prejudice as a result of plaintiff's conduct prior to the PF&R, requiring defendants to respond to plaintiff's 25 newly filed motions and requests and renew discovery efforts would result in some significant prejudice to them. Further, given plaintiff's failure to respond to Officer Kapeluck's discovery requests that continues even now, setting new discovery deadlines imposes no consequence on plaintiff's avoidance of court-ordered obligations, while defendants are forced to await plaintiff's unpredictable compliance.

Although dismissal for failure to prosecute is a viable option, a more appropriate alternative to dismissal may be to rule on the defendants' motion for summary judgment on the merits. <u>See</u> <u>LeSane v. Hall's Sec. Analyst, Inc.</u>, 239 F.3d 206,

210 (2d Cir. 2001) (finding that the court should have considered "the sanction of deeming the assertions in defendant's rule 56.1 statement as admitted by plaintiff and then ruling on the merits of defendant's summary judgment motion without further delay" instead of dismissal).  The court finds this alternative to be reasonable and will proceed to the merits of defendants' motion for summary judgment.

III.

As an initial matter, the court must determine whether defendants' requests for admissions are deemed admitted under Rule 36 as a result of plaintiff's failure to respond to the requests.  Rule 36 provides that a matter is deemed "admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  Fed. R. Civ. P. 36(a)(3).

In this case, Officer Kapeluck tendered to plaintiff his requests for admissions on October 22, 2009.  On October 28, 2009, plaintiff filed a "Response of motions" objecting to the requests for admissions that pertained to anything other than the

12

incident which was the subject of his lawsuit, but declining to respond to any of the requests.  Officer Kapeluck filed a reply on November 3, 2009, and requested that the court direct plaintiff to respond to his requests.  On November 4, 2009, the magistrate judge entered an order granting Officer Kapeluck's motion to compel and directing plaintiff to respond to his discovery requests.  To date, plaintiff has not responded.

Although defendants have relied on plaintiff's "deemed" admissions in support of their motion for summary judgment, the court is reluctant to award summary judgment based on these admissions when plaintiff is proceeding pro se and may not have been aware of the detrimental impact of not responding to the requests for admission.  The record indicates that plaintiff was not issued a warning, either when the requests were served or in the order compelling his responses, that the requests would be deemed admitted if he failed to respond.  A review of caselaw does not reveal that there is a requirement for the court to give a pro se plaintiff notice that failure to admit or deny requests for admissions deems the admissions admitted; however, other courts have expressed reluctance to decide a case on the merits against pro se plaintiffs based on deemed admissions.  See United States v. Renfrow, 612 F.Supp. 2d 677, 683 (E.D. N.C. 2009)

13

(recognizing courts' reluctance to award summary judgment based on a <u>pro</u> <u>se</u> party's deemed admissions, but holding that the government's requests were deemed admitted since the <u>pro</u> <u>se</u> party had been given notice of the effect of not responding); <u>Diggs v. Keller</u>, 181 F.R.D. 468, 469 (D. Nev. 1998) (holding that "<u>pro</u> <u>se</u> prisoners are entitled to notice that matters found in requests for admission will be deemed admitted unless responded to within 30 days after such requests have been served."); <u>Local Union No. 38, Sheet Metal Workers' Intern. Ass'n, AFL-CIO v. Tripodi</u>, 913 F.Supp. 290, 293 (S.D. N.Y. 1996) (declining to preclude defendant, who became <u>pro</u> <u>se</u> upon releasing his dilatory attorney the day after responses were due, from disputing relevant facts based on his failure to respond to requests for admission); <u>United States v. Turk</u>, 139 F.R.D. 615, 617 (D. Md. 1991) ("[T]he Court is reluctant to grant summary judgment against a <u>pro</u> <u>se</u> defendant based solely upon his failure to comply with the discovery requirements of the Federal Rules of Civil Procedure.").

Inasmuch as plaintiff is proceeding <u>pro</u> <u>se</u> and was not informed of the detrimental effect of not admitting or denying the requests for admissions, the court declines to hold that Officer Kapeluck's requests for admissions are deemed admitted by

14

plaintiff.  Thus, the court will consider the defendants' motion for summary judgment without plaintiff's deemed admissions.

IV.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of

15

fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

16

V.

A. Factual Discrepancies

In his 25 recent filings, plaintiff disputes only the portion of defendants' motion for summary judgment that asserts Officer Kapeluck tasered plaintiff one time.  (Resp. to PF&R 2, March 23, 2010).  While plaintiff claims he was tasered twice, once in the leg and once in the testicles, the investigative supplementary report attached in exhibit A to defendants' motion for summary judgment indicates that as a response to plaintiff's "outburst" and attempts to swing his arms and kick his legs, Officer Kapeluck deployed the taser one time in plaintiff's leg, and plaintiff's continued struggling caused the taser to move toward his groin area.  Both parties' versions of the incident support the conclusion that the taser made contact with the plaintiff's leg and groin area.

The only other factual discrepancy is whether or not plaintiff's legs were restrained at the time the taser was used. In his amended complaint, plaintiff states that he was "subdued in shackles and handcuffs."  (Am. Compl. 5).  In their motion for summary judgment, defendants assert that plaintiff's legs were

not shackled and he kicked at the defendants.  (Def.'s Mem. 4).
The following record evidence submitted by defendants supports
defendants' assertion and may be considered by the court: the
Supervisory Taser Use Report synopsis states that "after" the use
of the taser, plaintiff was "still uncooperative [and] had to be
leg shackled"; a General Investigative Supplementary Report by
Officer Howell states that plaintiff kicked Officer Kapeluck in
the right hand, causing minor cuts to his hand; a General
Investigative Supplementary Report by Officer Kapeluck states
that plaintiff continued to kick his legs after he fell to the
ground, and that Officer Kapeluck grabbed one of his legs but was
unable to stop the kicking; a General Investigative Supplementary
Report by Sergeant Petty stating that as plaintiff was being
escorted from the courtroom, he jerked his arms and pulled his
legs up in the air, and after exiting the courtroom plaintiff
kicked Officers Howell and Kapeluck, and after the use of the
taser Corporal Nell secured plaintiff's feet with a zip tie; and
the criminal complaint against plaintiff for disorderly conduct,
battery on officer and resisting states that Officers Howell and
Kapeluck sustained minor injuries from plaintiff kicking and
swinging his arms.  (All attached in Exhibit A to defendant's
Mot. Summ. J.).  See Woods v. City of Chicago, 234 F.3d 979, 988
( 7th Cir. 2000) (concluding that "the district court was

entitled to consider the arrest report and the misdemeanor complaint even if they were not admissible as 'affidavits,' under 28 U.S.C. § 1746 or Fed. R. Civ. P. 56(e), so long as those documents were properly authenticated and were otherwise admissible," and that the "court did not abuse its discretion in admitting [those documents] as business records without requiring the defendants to authenticate them by affidavit.").

Because the plaintiff is entitled to have his version of the facts accepted as true, the court will assume that his legs were restrained at the time of the incident.  However, plaintiff does not contend that the shackles on his legs prevented him from kicking the officers.

B. Officers Howell and Kapeluck Did Not Use Excessive Force

The Court of Appeals for the Fourth Circuit confronted the issue of whether use of a taser constituted excessive force in Orem v. Rephann, 523 F.3d 442 (4th Cir. 2008).  In Orem, the plaintiff, Orem, a 100 pound 27-year-old woman, was handcuffed and locked in the back seat of a police car after being arrested. Id. at 444, 445.  When Orem began "jumping around" in her seat and banging up against the seat and the window such that the

19

vehicle rocked, the transporting officer stopped the car to control her.  Id. at 444.  The sheriff's deputy, weighing 280 pounds, approached Orem with his taser gun and attempted to calm her down verbally.  Id. at 444-45.  During their conversation, the deputy warned Orem to calm down and respect him, and then shocked her under her left breast and on her inner thigh.  Id. at 445.  Orem sued, alleging excessive force.  Id.

The court, in affirming the district court's denial of summary judgment for the defendant, analyzed Orem's excessive force claim under the Due Process Clause of the Fourteenth Amendment, inasmuch as her claim arose after she was arrested, rendering her an arrestee and not protected by the Fourth Amendment.  Id. at 445-46 (citing Riley v. Dorton, 115 F.3d 1159 (4th Cir. 1997)).  Similarly, here plaintiff had already been arrested and was appearing in court for an unrelated matter at the time of the incident.

The Orem opinion set forth the standard for an excessive force claim under the Fourteenth Amendment:

> To succeed on an excessive force claim under the Due Process Clause of the Fourteenth Amendment, Orem must show that Deputy Rephann "inflicted unnecessary and wanton pain and suffering."  "In determining whether [this] constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need

20

and the amount of force used, the extent of the injury
inflicted, and whether the force was applied in a good
faith effort to maintain and restore discipline or
maliciously and sadistically for the very purpose of
causing harm."

Id. at 446 (citing Taylor v. McDuffie, 155 F.3d 479, 483 (4th

Cir. 1998)); Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.

1973)).

Finding that the deputy who tasered Orem did so after

being verbally provoked by her, and "that Orem was handcuffed,

weighed 100 pounds, had her ankles loosened in the hobbling

device which Deputy Boyles was tightening, and was locked in the

back seat cage" of the police vehicle, the court concluded that

the deputy's "use of the taser [was] wanton, sadistic, and not a

good faith effort to restore discipline," and that it constituted

excessive force.  Id. at 447.  The court of appeals also noted

that the deputy tasered Orem's left breast and inner thigh

despite being closer to her right side where that could have been

avoided, and found that a reasonable juror could conclude that

the deputy's use of the taser in the affected areas was intended

to cause Orem embarrassment.  Id.

In this case, defendants assert, and plaintiff does not

dispute, that plaintiff was ordered to leave the municipal

courtroom by Judge Taylor following an outburst during his court

21

appearance.  As he was being escorted out, defendants assert, and again plaintiff does not dispute, that he struggled against the officers, kicking his legs up and jerking his arms around.  In an attempt to subdue plaintiff during this altercation, Officer Kapeluck deployed his taser, contacting plaintiff's leg and groin.  Although tasering is a serious use of force with painful effects,[2] the court is unable to conclude that the defendants' use of the taser was an "unnecessary and wanton infliction of pain."

Unlike Orem in the back seat cage, plaintiff was in an open space, and his outburst and accompanying jerking and kicking posed a greater threat to the officers and any surrounding individuals.  His continued outburst and physical aggression toward the officers resulted in an injury to Officer Kapeluck and criminal charges against plaintiff, demonstrating that there was a need for the application of force.

Although plaintiff claims he was tasered twice, the

---

[2] The Orem court describes the serious nature of a taser, "'[A] stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless.  This is exactly the sort of torment without marks . . . which, if inflicted without legitimate reason, supports the Eighth Amendment's objective component.'" Id. at 448 (quoting Hickey v. Reeder, 12 F.3d 754, 757 (8th Cir. 1993).

facts are consistent that he was tasered one time but in two places as a result of his movements.  In this case, the single use of the taser indicates the officers' "good faith effort to restore discipline," and not an intent "to punish or intimidate" plaintiff.  Id. at 447, 449.  Thus, the amount of force used in the single tasering, despite the two contacts, does not outweigh the need for the application of force.  Additionally, while the taser came into contact with plaintiff's testicles, the manner in which the taser was used indicates that this placement was incidental to the circumstances, rather than deliberate or to cause plaintiff embarrassment as in Orem where the deputy tasered Orem in the breast and inner thigh.

     With respect to the extent of the injury inflicted, plaintiff asserts that he had pain, swelling, loss of appetite and pain urinating, but he does not assert any permanent injuries.  (Am. Compl. 4).  Plaintiff was seen by a doctor in jail who administered Motrin for his swelling and pain.  (Id.).  In one of his recently filed documents, plaintiff suggests that his sperm count may have been lowered by the tasering.  (Doc. 64).  In another recent document plaintiff asserts that he began feeling pain in his stomach and genitals on March 25, 2010, and believes this pain may relate to the tasering.  (Doc. 68).  There

23

is no evidence in the record to support either of these newly-asserted claims.

The court concludes that the officers used the taser for a legitimate purpose in protecting themselves and plaintiff, and the use did not constitute excessive force.  Orem, 523 F.3d at 449.  The court concludes that there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law.


VI.


For the foregoing reasons, it is ORDERED that the defendants' motion for summary judgment be, and it hereby is, granted.

The Clerk is directed to forward copies of this written opinion and order to the pro se plaintiff, all counsel of record, and the United States Magistrate Judge.

DATED: May 14, 2010

John T. Copenhaver, Jr.
United States District Judge

24